UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| PATRICIA S.,<br>    Plaintiff,<br><br>v.<br><br>KILOLO KIJAKAZI, ACTING COMM'R<br>OF SOC. SEC.,<br>    Defendant. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | CIVIL CASE NO.<br>3:20-CV-01609 (JCH)<br><br><br><br>MARCH 18, 2022 |

**RULING ON PLAINTIFF'S MOTION TO REVERSE THE DECISION OF THE COMMISSIONER (DOC. NO. 16) AND DEFENDANT'S MOTION TO AFFIRM THE DECISION OF THE COMMISSIONER (DOC. NO. 21)**

**I.     INTRODUCTION**

Plaintiff Patricia S. ("Patricia") brings this action under section 405(g) of title 42 of the United States Code, appealing the final Decision of the Commissioner of the Social Security Administration ("the Commissioner") denying her application for Disability Insurance Benefits ("DIB") benefits.  See Compl. (Doc. No. 1).  She moves to reverse the Decision of the Commissioner or, in the alternative, to remand for an additional hearing.  See Mot. for Order (Doc. No. 16); Pl.'s Mem. in Supp. of Mot. for Order Reversing the Decision of the Comm'r (Doc. No. 16-1) ("Pl.'s Mem.").  The Commissioner cross-moves for an order affirming his Decision.  See Mot. for Order (Doc. No. 21); Def.'s Mem. in Supp. of Her Mot. for an Order Affirming the Comm'r's Decision (Doc. No. 21-1) ("Def.'s Mem.").

For the reasons discussed below, the court grants defendant's Motion and denies plaintiff's Motion.

1

## II.     BACKGROUND

Plaintiff Patricia S. filed this action on October 26, 2020.  See Compl.  She had originally filed her DIB application on August 17, 2018, alleging disability beginning on October 7, 2016.  See AR at 13, 162-63.  Her claim was initially denied on October 17, 2018, as was her request for reconsideration a month and a half later.  Id. at 13; Pl.'s Mem. at 3.  She then requested a hearing before an Administrative Law Judge ("ALJ"), which was held on October 18, 2019. AR at 26-65.  "At the hearing . . . on the advice of counsel", Patricia "amended the alleged onset date to May 3, 2017", which was the date she was injured as a passenger in a motor vehicle accident.  Id. at 13; Pl.'s Medical Chronology at ¶ 2 ("Pl.'s Material Facts") (Doc. No. 16-2); Def.'s Resp. to Pl.'s Statement of Facts at ¶ 2 ("Def.'s Material Facts") (Doc. No. 21-2).  Following that hearing, the ALJ issued his Decision denying her claim on November 12, 2019.[1] Id. at 10-21.  After the Appeals Council denied her request for review, she brought the instant action in this court.  Id. at 1-6.

The court otherwise assumes familiarity with the Administrative Record ("AR") in this case and adopts the undisputed but supported facts as stated by the parties in their Joint Statement of Material Facts.  See Pl.'s Material Facts; Def.'s Material Facts. When relevant, however, the court does note any disagreements between the parties as to these facts below.

---

[1] The ALJ also found that the last date Patricia was insured was December 31, 2017.  AR at 21. As such, he determined that she was not disabled within the meaning of sections 216(i) and 223(d) of the Social Security Act between May 3, 2017 – the alleged onset date of her disability – and December 31, 2017 – her Date Last Insured ("DLI").  Id.  Neither party challenges that this is the relevant time period here.

2

### III. STANDARD OF REVIEW

The ALJ follows a five-step evaluation to determine whether a claimant is disabled within the meaning of the Social Security Act. At the first step, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity. If not, the Commissioner proceeds to the second step and considers whether the claimant has a "severe impairment" which limits his or her mental or physical ability to do basic work activities. If the claimant has a "severe impairment", the Commissioner proceeds to step three and asks whether, based solely on the medical evidence, the claimant has an impairment listed in Appendix 1 of the regulations. See 20 C.F.R. § 416.920(a)(4). If the claimant has one of these enumerated impairments, the Commissioner will automatically consider that claimant disabled, without considering vocational factors such as age, education, and work experience. Id.

If the impairment is not "listed" in the regulations, the Commissioner proceeds to step four and asks whether, despite the claimant's severe impairment, he or she has the Residual Functional Capacity ("RFC") to perform past work. At step five, the Commissioner determines whether there is other work the claimant could perform. Id. To be considered disabled, an individual's impairment must be "of such severity that he is not only unable to do his previous work but cannot . . . engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). The Commissioner bears the burden of proof on the fifth step, while the claimant has the burden on the first four steps. See McIntyre v. Colvin 758 F.3d 146, 150 (2d Cir. 2014).

Under section 405(g) of title 42 of the United States Code, the district court may not review de novo an ALJ's Decision as to whether the claimant was disabled. See

3

Schaal v. Apfel, 134 F.3d 496, 501 (2d Cir. 1998).  The court's review of the Commissioner's Decision "is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard."  Selian v. Astrue, 708 F.3d 409, 417 (2d Cir. 2013) (citation omitted); see also 42 U.S.C. § 405(g).  "Substantial evidence" requires "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Id. (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).  If the Commissioner's findings of fact are supported by substantial evidence, those findings are conclusive, and the court will not substitute its judgment in this regard for that of the Commissioner.  42 U.S.C. § 405(g); see also Yancey v. Apfel, 145 F.3d 106, 111 (2d Cir. 1998).

## IV.   ANALYSIS

Patricia first argues that this court should reverse the Decision of the Commissioner to deny her DIB application because that Decision was not supported by substantial evidence.  In particular, she argues that the ALJ "minimized her pre-DLI impairments" by "not properly evaluat[ing]" medical evidence from after her DLI "that clearly related to the relevant period."  Pl.'s Mem. at 2.  In the alternative, Patricia also argues that the court should remand this case back to the ALJ.  In addition to pointing to what she argues was the ALJ's failure to consider relevant post-Date Last Insured ("DLI") records, she also argues that remand is warranted because the ALJ: (1) "misstated the record"; (2) "composed an incomplete [RFC] description"; and (3) "did not properly evaluate the vocational evidence at Step Four."  Id. at 3.

The court addresses each of these arguments in turn and, because it does not find them availing, grants defendant's Motion and denies plaintiff's Motion.

A.     Substantial Evidence and post-DLI Medical Evidence

As discussed above, supra, Section III, "[i]n reviewing the decision of the Commissioner, the Court's role is limited to determining whether the [SSA's] conclusions were supported by substantial evidence in the record and were based on a correct legal standard." Scognamiglio v. Saul, 432 F. Supp. 3d 239, 244 (E.D.N.Y. 2020) (internal quotations and citations omitted).  This is not de novo review; rather, this court is tasked with "examin[ing] the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." Id. (internal quotations and citations omitted).  "Ultimately, the Court [then] defer[s] to the Commissioner's resolution of conflicting evidence." Id. (internal quotations and citations omitted).  The substantial evidence standard is "a very deferential standard of review." Brault v. Soc. Sec. Admin., Comm'r, 683 F.3d 443, 448 (2d Cir. 2012).  Applying it "means [that] once an ALJ finds facts", this court "can reject those facts only if a reasonable factfinder would have to conclude otherwise." Id. (emphasis in original) (internal quotations and citations omitted).

Where, as is the case here, the record before the ALJ includes medical evidence after the claimant's DLI, such "evidence that [the] claimant suffered from a disability after the [DLI] is [still] relevant to the question [of] whether the claimant was disabled prior to the [DIL]." Camilo v. Comm'r of the Soc. Sec. Admin., No. 11 Civ. 1345, 2013 WL 5692435, at *18 (S.D.N.Y. Oct. 2, 2013).  Simply because "there [is] no specific medical evidence [in the record] to establish a disability during the [relevant] time period, other than Plaintiff's own evaluation", does not necessarily mean the claimant is not disabled. Rogers v. Astrue, 895 F. Supp. 2d 541, 551 (S.D.N.Y. 2012) (internal quotations and citations omitted).  Instead, "it [is] legal error for the ALJ to rely on

Plaintiff's lack of evidence from the relevant time period to deny benefits without first attempting to adequately develop the record, or to pursue or consider the possibility of [a] retroactive diagnosis." Id. at 552 (internal quotations and citations omitted).  When post-DIL medical evidence indicates "a continuity of [ ] problems commencing well before the [DIL]", "implie[s]" as much, or there is an actual retroactive diagnosis in the record, an ALJ is "obligated . . . to explore the possibility that the diagnoses applied retrospectively to the insured period" and fill any gaps in the record.  Martinez v. Massanari, 242 F. Supp. 2d 372, 378 (S.D.N.Y. 2003); Rogers, 895 F. Supp. 2d at 551-52.  Failure to do so may constitute legal error.

      Here, Patricia argues the ALJ failed to do just that.  She contends that the ALJ erroneously "drew a very clear line between the pre-DLI and post-DLI evidence" and that, had he not done so, the record would have revealed the "very clear connection between [Patricia's] May 2017 car accident, resulting in spinal injuries and a prolapsed bladder, and the symptoms documented shortly after her DLI including pain, urinary symptoms, and visual impairments."  Pl.'s Mem. at 11-12.  Defendant counters by pointing out that the medical evidence from the relevant period – which includes only Patricia's emergency room visit the day of the accident in May 2017 and a follow-up visit two months later – does not support her allegations of disability, and that the ALJ reasonably concluded that the post-DLI evidence in the record showing that her medical condition had worsened after her DLI was not consistent with her claim that a disability existed prior to her DLI.[2]  Def.'s Mem. at 4-5.

---

[2] In her Statement of Material Facts, Patricia states that she had a CT scan in May 2017 following the accident as well, and that it revealed "mild kyphosis of the upper thoracic spine which [had] increased in severity compared to [the] previous study, but no acute fractures."  Pl.'s Material Facts at ¶ 3.

6

The court concludes that, because there is conflicting evidence in the record as to whether the post-DLI evidence shows that Patricia was disabled before her DLI, it must defer to the ALJ's resolution of the conflicting evidence.  As an initial matter, Patricia does not appear to argue that the ALJ failed to adequately develop the record; instead, she argues that he "fail[ed] to consider" post-DLI records and, to the extent that he did factor them in, improperly found that the March 2018, post-DLI opinion of her treating chiropractor was "unpersuasive."  Pl.'s Mem. at 11-15.  First, Patricia's argument that the ALJ failed to consider post-DLI evidence is belied by the record.  In his Decision, the ALJ "consider[ed] [ ] the entire record", grappled with the post-DLI medical evidence, and attempted to determine whether it was indicative of a disability prior to Patricia's DLI.  See AR at 15.  Second, the ALJ did not improperly discount the chiropractor's opinion.  By regulation, "a chiropractor . . . [is] not an acceptable medical source", even if he or she is a treating source.  Luis B. v. Comm'r of Soc. Sec., No. 1:20-CV-1452, 2022 WL 268820, at *7 (W.D.N.Y. Jan. 28, 2022).  Although "under the new regulations, all medical sources, not just 'acceptable' medical sources, can provide evidence that will be considered medical opinions", the ALJ is not required to give controlling weight such an opinion, and he can properly discount it if his conclusion is supported by substantial evidence.  Mark B. v. Comm'r of Soc. Sec., No. 20-CV-1587, 2022 WL 137718, at *5 (N.D.N.Y. Jan. 14, 2022).

Here, the ALJ had substantial evidence to conclude that Patricia was not disabled within the meaning of the Social Security Act prior to her DLI.  On the day of

---

Defendant points out, however, that an examination of the pages in the record plaintiff cites to shows that this examination occurred in 2015, not 2017.  Def.'s Material Facts at ¶ 3.  The record indicates that defendant is correct.  See AR at 410.

7

the accident, Patricia was discharged from the emergency room after being prescribed only ibuprofen.  AR at 414.  The evaluating Doctor's notes observed that she had "[n]o midline c-spine tenderness nor other [ ] criteria to warrant [any] imaging", and that her left shoulder was not fractured.  Id. at 413.  Overall, there were no disabling injuries observed, and when she was discharged her injuries were summarized as "generalized body aches" resulting from the accident.  Id. at 414.  In her follow-up outpatient visit in July, it was noted that her lingering injuries from the accident included "residual left sided cervical pain, bilateral thumb pain [with the] right greater than [the] left [but resolving] . . . left shoulder tenderness . . . [that] ha[d] diminished significantly . . . [and a] soft welling left anterior base of [her] neck that [was] painless."  Id. at 409, 411.  She continued to use ibuprofen and also "applied ice for the first two days [but by then was] us[ing] [a] warm bath or heat for the cervical pain with temporary relief."  Id.  The doctor also observed "preservation of the normal height and alignment of vertebral bodies . . . [and] [m]ild disc space narrowing . . . from C5 to C7" with no fractures.  Id. at 410.  Although Patricia was not prescribed any further treatment at that time, it was noted that she might require physical therapy in the future.  Id. at 411.

These two visits constituted the complete, contemporary, medical evidence in the record during the period between Patricia's alleged onset of disability and her DLI.  However, in March 2018, approximately two and a half to three months after her DLI, Patricia had an X-ray and MRI work done on her spine which showed "mild scoliosis and chronic degenerative disc disease at L5-S1", as well as "visualized mild facet degenerate at L4-L5 and L5-S1" and "mild central spinal stenosis."  Pl.'s Material Facts at ¶¶ 7-8, 10; Def.'s Material Facts at ¶¶ 7-8, 10.  Patricia saw the chiropractor around

8

this time as well, and on March 20, 2018, he signed an Initial Medical Report documenting her injuries.  AR at 846-48.

Still, despite the apparent worsening of her injuries, the ALJ still concluded that, prior to her DLI, Patricia was not disabled within the meaning of the Social Security Act.  His reasoning in this regard was supported by substantial evidence.  For instance, as it relates to Patricia's testimony about her "migraines with aura and blurry vision", the ALJ noted that the medical evidence in the record documenting that impairment had all occurred post-DLI, and that in her two pre-DLI visits she had actually "denied headaches, blurry vision and decreased vision."[3]  AR at 16.  As for the chiropractor's opinion and the March 2018 X-Ray and MRI work, the ALJ reasoned that the "conservative treatment modalities" during that period – i.e., ibuprofen, chiropractic treatment, and topical gels – were "not consistent with the degree of limitation" she had alleged.  Id. at 19.  Moreover, he noted that these records were from two and a half to three months after her DLI, and that "[t]he significant abnormal findings seen by [the chiropractor] were not seen on [the] medical examination in July, 2017", right after the car accident.  Id.  To be sure, as Patricia points out, the examinations she was given in March 2018 were more comprehensive than what she was given in July 2017.  Pl.'s Mem. at 13-14.  The ALJ, however, carefully reviewed the pre-DLI medical evidence in the record and concluded that the severity of her symptoms in Match 2018 were not indicative of a disability before her DLI.  "The relevant question", of course, "is not when

---

[3] A similar phenomenon is true of Patricia's urinary incontinence and prolapsed bladder.  Patricia underwent surgery in June 2016 to relieve her incontinence, and there is no mention of it as an ongoing issue in the records during the relevant period.  See Pl.'s Mem. at 10-11; Def.'s Mem. at 8-9.  Although Patricia states it was the accident that caused her bladder issues to resurface, it was not until April 2018 that these issues are mentioned in the record and, as the ALJ noted, they are absent from records during the relevant period.  Pl.'s Mem. at 11; AR at 19.

[Patricia] first developed the disease, or even when she first showed symptoms of the disease, but it is when she became unable to work because of the disease." Mauro v. Comm'r of Soc. Sec. Admin., 746 F. App'x 83, 84 (2d Cir. 2019) (emphasis in original). In light of the conflicting evidence – i.e., the relative lack of medical evidence of a disability in the pre-DLI records, and the evidence from March 2018 onward that her condition appeared to worsen over time – this court cannot conclude that "a reasonable factfinder would have [had] to conclude otherwise" and find that Patricia was disabled before her DLI. Brault, 683 F.3d at 448 (emphasis in original).

For this reason, the court denies Patricia's Motion as to her argument that the ALJ's findings were not supported by substantial evidence.

B.   Other Arguments

Patricia advances three other arguments as to why this case should be remanded, none of which are availing.

1.   "Serious Factual Errors"

First, she highlights what she argues were three "serious factual errors" in the ALJ's Decision. Pl.'s Mem. at 10-11. The first relates to Patricia's "hand and shoulder dysfunction." Id. at 10. The ALJ erred, she argues, by using her April 2018 physical therapy records to discount her pain in those areas. Patricia's "physical therapy only work[ed] on one body part at a time due to insurance", so her failure to report those symptoms in April 2018 was due to the fact that her therapy sessions were focused on other body parts, not because she did not continue to have hand and shoulder pain. Id. Even assuming this as true, the ALJ's conclusion that Patricia could still "frequently handle, finger, and fell with her bilateral upper extremities" was still supported by substantial evidence. AR at 19. The ALJ also noted that, in her pre-DLI examinations,

her "bilateral thumb contusions . . . were noted to be resolving." In addition, in a January 2018 appointment less than a month after her DLI, Patricia was observed to have only "mild soft tissue swelling" with "tenderness to palpation anteriorly" in her left shoulder with "no erythema or tenderness" and "full range of motion." AR at 283-84. The ALJ was entitled to rely on this contemporaneous evidence in the record to conclude that Patricia was not disabled within the meaning of the Social Security Act during the relevant period.

Second, Patricia argues that the ALJ erred in finding that the medical evidence supported the conclusion that her "'pain diminished significantly with treatment consisting of ice packs and warm baths.'" Pl.'s Mem. at 10 (quoting AR at 19). Instead, she says, the record demonstrates that "[i]ce and warm baths [were] not a reasonable pain solution for [Patricia], and due to her continued pain, her doctors have recommended Meloxicam, trigger point injections, and a TENs unit." Id. (internal citations omitted). While the ALJ's statement that Patricia's pain had "diminished significantly" from the ice packs and warm baths <u>specifically</u> appears to be an overstatement, <u>see</u> AR at 409 (noting that warm baths provided "temporary relief"), his conclusion that some of her pain – including her left shoulder pain – had "diminished significantly" between the time of the accident and her July 2017 follow-up appointment is supported by the record. AR at 409. In addition, the ALJ noted and considered her other treatment in his Decision, including her "chiropractic treatment, 600 mg of Ibuprofen, and Voltaren topical gel." AR at 19. Given his comprehensive review of Patricia's treatment, it was not a misstatement or misevaluation of the record to fail to mention meloxicam, trigger point injections, or TENs units: Patricia appears to have only

used meloxicam briefly before switching to ibuprofen, see AR at 409, 278, and the recommendation that she consider trigger point injections and a TENs unit that she points to in the record is from December 2018, nearly a full year after her DLI.  See Pl.'s Mem. at 10 (citing AR at 668).

Finally, as to Patricia's third claim of serious factual error, the ALJ did not commit any serious factual errors in weighing the medical evidence in the record related to Patricia's bladder issues.  See supra n. 3.

### 2. RFC Determination

Patricia next argues that the ALJ failed to consider the entirety of the evidence in formulating her RFC.  In support of this argument, she cites entirely to her own testimony at the hearing before the ALJ and post-DLI medical evidence in the record.  See Pl.'s Mem. at 15-17.  However, as the ALJ noted, he is not required to blindly credit a claimant's "statements concerning the intensity, persistence and limiting effects of [her] symptoms" when they "are not entirely consistent with the medical evidence and other evidence in the record" for the relevant period.  AR at 18; see also Grenier v. Astrue, 606 F.3d 46, 49 (2d Cir. 2010) ("[w]hen determining a claimant's RFC, the ALJ is required to take the claimant's reports of pain and other limitations into account, but is not required to accept the claimant's subjective complaints without question; he may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record") (internal citations omitted).  Here, the ALJ carefully considered the evidence, weighing Patricia's testimony about her symptoms against the evidence in the record, before concluding she was not disabled during the relevant period.  "Because the ALJ thoroughly explained his credibility determination and the record evidence permits [this court] to glean the rationale of the ALJ's decision", remand

on these grounds is not warranted.  Cichocki v. Astrue, 534 F. App'x 71, 76 (2d Cir. 2013).

        3.      Vocational Evidence

Finally, Patricia's argument that the ALJ did not properly evaluate the vocational evidence in the record misunderstands the standard for how the Social Security Administration evaluates a claimant's ability to return to past work.  She argues that "the ALJ found that [she] can return to past work that she [had] never [actually] performed", and that the specifics of her particular past employment were different than the requirements of the DOT job description used by the vocational expert at the hearing. Pl.'s Mem. at 17-18.  This ignores the fact that the ALJ is required to determine not just whether the claimant can still perform "[t]he actual functional demands and job duties of a particular past relevant job", but also whether they can perform "[t]he functional demands and job duties of the occupation as generally required by employers throughout the national economy."  Social Security Ruling (SSR) 82-61, 1982 WL 31387, at *2 (S.S.A. 1982) (emphasis added); see also 20 C.F.R. § 404.1560(b)(2). The ALJ did not err in applying this standard when he determined that Patricia's "past work [could] best be described as director, employment services" and that her RFC at her DLI would allow her to perform such work as generally performed in the national economy, even in light of evidence that Patricia's actual past work had been slightly more demanding.  AR at 20.

**V.    CONCLUSION**

For the reasons stated above, the court grants defendant's Motion and denies plaintiff's Motion.

**SO ORDERED.**

Dated at New Haven, Connecticut this 18th day of March 2022.

/s/ Janet C. Hall
Janet C. Hall
United States District Judge